Good morning, Your Honor. Charles Donovan. We'll wait just a moment. Before we begin, we have listed here an appearance by Paulo Henrique Vargas from Brazil. Is that you, sir? Yes. Would you come forward, please? Are you a member of the Bar of California? No. Are you a member of any state in the Ninth Circuit? No. Are you a member of a bar of any state in the United States? No. Are you a member of the bar in Brazil? Yes. And what is your bar membership in Brazil? To which bar? Bar of the state of São Paulo. All right. It's by virtue of our rules, one must be admitted to the Ninth Circuit to argue in the Ninth Circuit. Also, one, to be admitted in the Ninth Circuit, one must be a member of at least some bar in the United States. Because you have come here, what I propose to do is if you want to make an argument on behalf of your client, you may do so, but we will reserve as to whether we will credit the substance of that argument because you are not admitted to the courts of the United States. Do you understand that? So we will let you argue, but reserve judgment on that point. Thank you. And you may proceed, Mr. Donovan. Thank you, Your Honor. I'd like to reserve three minutes' rebuttal time, please. Your Honor, with Mr. Vargas' appearance, I suspect that the other side is going to attempt to raise issues with regard to the Brazilian proceedings and their effect possibly on what goes on before this Court in this appeal. I'd like to start out by saying that we object to the extent that the defendant's attempt to introduce some new point regarding Brazilian law under Rule 44.1 of the Federal Rules of Civil Procedure, if they are going to raise a point of foreign law, we are entitled to advance notice of that. Showing up now on the morning of an argument, after having had the opportunity numerous times to brief it, not just on the merits, but in connection with motions that have been filed, we don't think is adequate notice. On the other hand ---- We don't know what he's going to argue. I don't either, Your Honor. Why are we discussing that? Right. What I'd like to emphasize is this is an American judgment between two parties who consented to the application of American law and agreed to litigate in an American court. And after this case had taken its full course through trial and two judgments, and after the judgment itself had become final, the defendants then instituted new proceedings on the same contract in a foreign country. Now, this Court does not have to look any further than its own decision in Seattle Totems. Yes, Your Honor. This Court, meaning the United States District Court, concluded in 2001, approximately. No, that's right. It was the following summer that the Brazilian action got filed, 2002? Yes, Your Honor. And did your client participate in that action? My client participated in that action in the action in Manaus, yes, Your Honor. We raised ---- You appeared and participated and raised issues. We did, yes, Your Honor. We asserted the district court's judgment as res judicata. We pointed out that the defendants had agreed to litigate their disputes in this court. Right. And then it wasn't ---- so that's in July 2002. So it wasn't until three years later that you then asked the district court here for an injunction. Is that correct? That's correct, Your Honor. Okay. And now the injunction was an injunction against the Brazilian action proceeding. Is that correct? No. The injunction was an injunction to the defendants. To the parties. Yes, to prevent them from proceeding with the Brazilian action. It did not attempt to stop this. And I misspoke. It was the parties. Okay. Well, now that the Brazilian action has been completed, isn't this case moot in terms of what injunction could a United States court issue against parties to not bring an action in Brazil when they've already brought it, and you now have a judgment of another country? Your Honor, the Brazilian proceedings are not final. And, indeed, my clients have appealed the order that the court issued there to the court of the next instance. Now, I'm not a Brazilian lawyer, but my understanding is that unlike in the United States where when you go to the next level of judicial review, you only deal with questions of law. I know it's more of a de novo type of proceeding. Yes, Your Honor. And, in fact, we had a declaration that we submitted to the district court from Pedro Calamon, which is in the record. He's our client's Brazilian attorney, that showed the very type of simple pleading that the court could order the defendants to file to stop the Brazilian case from going further. And that is what we asked the court to direct the defendants to do, simply to dismiss the case with prejudice in Brazil. What would be the effect if it doesn't go further? In Brazil?  My understanding, Your Honor, is that if it's dismissed, it's dismissed and it's gone. It's as if it should happen. It operates as a dismissal? Yes. And we also, my client as applicant or plaintiff, I'm not exactly sure what the  the judgment in Brazil. Those are in the capital city of Brasilia. The defendants sued us in the provincial town in the middle of the Amazon jungle, Manaus. And that's the case that we want to stop. And you have an impeachment proceeding in Brazil before it is final? Because you say that the failure to proceed further negates the whole thing. Correct. And one of our worries, Your Honor, and exactly what the defendants are trying to do is to stall proceedings here so that they will be able to get their judgment to the point of finality in Brazil, which it hasn't reached yet, so that they will thwart the judgment that the district court issued. Well, is the district court judgment here on appeal? No. They never appeal. So isn't that district court judgment final? Yes. So I don't understand your last statement then, saying they're trying to get theirs done first because if your judgment is already final in the United States, it's final. That's true. And, in fact, in this country, if they had assets in this country, we would have executed it and we wouldn't be here today. The problem is we have to take the U.S. judgment and enforce it abroad. We have taken it to Switzerland. We have enforced it in Switzerland against their property. And we have collected a small amount of money in Switzerland against these defendants where they have assets. These defendants have assets in numerous jurisdictions. But we know they're Brazilians and most of their assets are in Brazil. That's what we're trying to enforce. Is Brazil a member of the Hague Convention in terms of judgment enforcement? Not only is Brazil not a signatory to any convention on enforcement of judgments, Your Honor, the United States is not a signatory to any convention on enforcement of judgments. So the answer is, unfortunately, no. The Lugano Convention on Enforcement of Judgments is enforced in neither country so that the enforcement of our client's judgment in Brazil depends upon the recognition of the judgment by the Brazilian courts. The procedure for doing that, when you're the plaintiff and the judgment holder, is to go to the federal court in Brasilia and file what's called an ex-a-quadra proceeding, which we are in the process of doing, right? And it's under consideration now. So there's this judgment in Manaus, and then there's also a separate suit filed in Brasilia? A legal proceeding. I don't know if they'd call it a suit, yes, to enforce the U.S. judgment. I think of a suit as sort of on the merits, and my understanding is it's more in the nature of examining the judgment here to determine whether the court will enforce it or not. All right. Your Honor, Seattle Totem says that a fundamental policy of the United States, if it applies to the case, justifies the court, the district court, in issuing an injunction against foreign proceedings. In that case, the defendant filed Canadian proceedings after having been sued in federal court in Seattle. The Seattle federal court enjoined the further proceedings in Canada. This case is even stronger than Seattle Totems. Seattle Totems have not yet come to judgment. This case has. Since you haven't heard what's going to be said, I haven't seen anything in writing, you might want to save some time. I'm sorry, Your Honor. I would like to reserve the remainder of my time. Thank you. All right. Mr. Farias. Good morning, Your Honors, and thank you very much for letting me speak in this court. This action is a little, it has been led to a little confusion. That's because we actually do have an action in Brazil, as Mr. Donovan said, we actually do have a proceeding at the Supreme Court of Brazil, which is the competent for enforcing foreign judgments in Brazil against Brazilian citizens or companies domiciled in Brazil, and we have this appeal. The action in Brazil was filed because the de Gregorios could not litigate here they could not pursue the action and their interests here. Why? Two reasons, actually. One, the cost. The second reason besides the cost was their status at the time. They were shutting down a business, a big business in Brazil. It was a big company in Brazil. They had to undergo so many proceedings in Brazil. Besides not having financial possibilities to pursue the interest here, they still had so much to do there that they ended up letting this case go without any really focusing on defending themselves. Didn't they participate in the defense of the action here? Yes, they did. But then after they lost, instead of appealing or anything, they filed a whole new action in Brazil? No. They filed, at my knowledge, I don't work for them for very long, but at my knowledge, they entered the action in Brazil just in 2002, if I'm not mistaken. The judgment here, as I understand, was in 2001. So they lost here. Yes. In effect, then, they defaulted here? No, no, they did not. I thought you said they didn't participate because they didn't have the funds. They didn't pursue. They participated at an extent, which is important to realize, is that they participated in this extent only because they, this is only what they could do at that time. They also pursued the suit in Brazil because there they could make their arguments and they were heard and revealed, which didn't happen here. If you see the records, Your Honor, you will realize that they changed attorneys two times, I believe. And even in this appeal, they even have an attorney present. They wrote some letters. I helped them. They seem to have the money to send you here. It's much cheaper than hiring an attorney here, Your Honor. It's a long ways from Brazil and an expensive plane ticket. So it's, you know, the difficulty now is that the only thing we're looking at is whether the district court should have entered an injunction so that DeGregorio should not bring another lawsuit in Brazil. So that's the only thing we can look at today. Okay, I can add something, if I may. I'd like to add something on what Mr. Donovan said. He is absolutely right when he says the first instance judgment in Brazil is not final. But to request for dismissal after the first instance judgment will be made either by, it has to be done or it has to be, the court of appeals has to be in accordance with such dismissal. And it may be done if the parties have agreed to a compromise, or if the parties have reached an agreement outside the court. But it cannot be done simply by saying, okay, the system has worked for me up to this moment. I have a judgment of first instance, and now I simply quit. This... Okay, in an appeal, you can't just quit. There is a constitutional principle in Brazil. It's under Article 5 of the Brazilian Constitution of 1988. It's based on liberal rights which we have, which have been inspired mainly by the United States. And one of these rights is that a Brazilian citizen has always the right to be heard before its courts. The second one which is relevant to this case is that once the judiciary started a suit, once we have broken the inertia of the judiciary system, such issue has to come to an end and the conflict solved. So for the conflict to be solved, the parties have to reach an agreement. So then the parties can petition in common to the court of appeals, and then the court of appeals will review the agreement entered by the parties, and then the court of appeals will dismiss the judgment. That is possible. I'm still not sure I understand. If no action at all is taken by de Gregorio, what's the effect then? The court of appeals will rule on the appeal. Now, no action is being taken now, for instance. There is an appeal pending which has been brought by Triton, and I believe de Gregorio are also asking for the review of one or two points. I'm not their lawyer in the Manaus lawsuit, but the court of appeals will judge the appeal anyway, unless the parties take the action to say, okay, we have reached an agreement, we have an understanding, and we want to dismiss this appeal and disregard the sentence, the judgment of the first instance court. So what about this, the judgment here that your clients participated in that is a valid United States judgment on the very same issue that you now want to start over and litigate in Brazil? Why isn't this judgment not only the first judgment, but a valid judgment? Your Honor, de Gregorio, they do not feel they actually participated in this judgment. I know this is a legal matter. It may be complicated to you. It may not be complicated to you. It's not complicated. I had that feeling. But the thing is, they do not feel they participated because they were not represented at all times in this suit. Well, they did have an attorney that filed an answer and participated in the action, did they not? I know. There were moments they didn't have any attorney. There were moments the attorneys had resigned and they were searching for other attorney until they hired someone else, and someone else appeared here and filed petitions and everything. But they didn't have a sequence. They couldn't have at all times an attorney following the proceedings for them. That's what they feel. I'm not saying they are right. I'm not saying they are wrong. I think we have your point in mind. Are there any other questions? Well, I'm curious about one thing. You've told us, and we have no way of knowing what you're talking about because we don't know the statutes of the Constitution of Brazil. But you're saying, as I understand it, that a party cannot dismiss an action once it's gone as far as the one has in Brazil unless there is a settlement and both parties agree. Is that basically what you're arguing? They can ask for the Court of Appeals to not rule on their appeal, but they cannot ask the Court of Appeals for the annulment of the first instance. Here we have, I think, a different problem. We have an injunction telling them that they cannot pursue an action in Brazil. If they went to the Brazilian appellate court and said, we've been enjoined not to do this and we have to obey that injunction, are you saying that the Court of Appeals could not act on that? Or is that an issue that they would have to resolve? I have to say, I must say, firstly, that it's the first time I hear such a thing and have this situation. I know, I know. The Civil Procedure Code in Brazil states that, I'm not sure if you have the concept of lit pendants. Well, do you have the concept in Brazil of comity? Do you know what I mean by that term? No. Would Brazil respect judgments of the courts of the United States? Yes, of course. According to the Havana Convention of 1927. Okay. Thank you. Thank you. Well, we do, just for your information, there is a judgment in the United States that is a final judgment. Thank you for your comments. You may proceed. Your Honor, I'd like to clarify some facts. Mr. Vargas has contended that the de Agourios didn't have the money to fight this lawsuit. That's just not true. They had a squadron of lawyers in the Manaus courtroom. I was there. They paid for all of them. They hired lawyers in Switzerland when we seized their bank account there to defend that. They can hire lawyers when they want to. They chose not to fight this lawsuit, and they fought it right up until the very end. The only point at which they didn't appear was after summary judgment had been entered against them on the issue of liability. They contested it with counsel right up to that point, and then simply did not show up for trial on the issue of damages. That was the only piece of the proceedings below in which they did not have an attorney. It was on the hearing on the damages on the judgment against them. They had conceded liability on the contract. Now they go to Brazil and raise this novation contention that they never even raised in the court below. Why didn't you file the request for injunction right when the Brazilian proceedings? I mean, that's troublesome. It's kind of one of these things where you wait and see, well, it doesn't look like it's going too well. We better file this injunction. Your Honor, that's a valid question, and it was a valid concern of ours. We are asking the Brazilian courts to enforce the U.S. judgment as a matter of comedy. It's offensive to a court to attempt to enjoin proceedings before it, and we attempted first to assert the judgment as res judicata as a defense in the Manaus case. I myself went to Manaus to explain to the court what had happened in the district court, explain how the judgment was final, explain how it was no longer subject to appeal or other review. It was clear to me from participating in the hearings there that the Brazilian court was not going to listen to us. That court was not interested in hearing the defense. It had made up its mind before the case began. Only once it became clear to us that there was no chance of getting justice from the Manaus court did we go back to the district court and attempt to stop it. We were faced with a Hobson's choice, Your Honor. And when you're attempting to enforce a judgment in another country, obviously the first thing is to ask the court to respect the judgment. Only once it became clear to us that the Brazilian courts in Manaus would not respect the judgment did we take the step of applying for the injunction. What do you think the practical effect would be if, hypothetically, the district court ordered the injunction against the De Gregorios? Well, if I understand what Mr. Vargas said, it's possible for the parties to agree, even at the case where the stage where the case is now, for the case to be dismissed. Which they could do without the injunction, but they haven't, obviously, for obvious reasons. Right. If they were enjoined to do so, they would have to do it. Even if the case came to judgment and the court of appeals refused to, for whatever, to honor the agreement that the court had compelled the defendants to go forward with, well, the court should enjoin them from enforcing the judgment. After all, the judgment that they got there was not just a violation of an already existing judgment. It was a violation of their agreement to litigate here, under U.S. law. You cannot run an international commercial system with one party to a contract saying, well, I'll try it first in the court in which I've agreed, and then I'll go back home and I'll try it again. That's just not workable. The United States Supreme Court in the Bremen said it would enforce these types of  It's a two-way street. It doesn't mean just sending Americans abroad to litigate when they've agreed to do so. It means if foreigners agree to resolve their disputes under our laws in our courts, then they must be bound by the judgments that our courts issue. What was the injunction specifically that was that you asked for in the district court? Was it just stop the proceedings or stop enforcement? We at that stage, Your Honor, we asked the district court to issue the injunction before the judgment issued from the court of first instance in Manaus. We had our Brazilian lawyer prepare a very simple pleading, which would be rather analogous to a request for dismissal in the United States, that would simply have dismissed the case there. I honestly don't know whether that would suffice at this point now that the case has gone to the second instance, but clearly something would do. Even Mr. Vargas concedes that it's possible for the parties to stop the case now, and the district court should order the parties to do that. We can get the paper from a Brazilian lawyer to do it. All we need is the judge to order the other parties to do it. So we're not talking about enforcement to stop enforcement of a Brazilian judgment? No, Your Honor. My understanding is that in order to stay enforcement of the Brazilian judgment, my clients posted a bond. And that was a substantial amount of money that they had to plunk down in Brazil in order to prevent the judgment from becoming executable against them while they went forward to the second instance. So what we're really talking about is an injunction to prevent them from going further in the second stage. Correct, Your Honor. Okay. So your position is that the restlessness on comedy was an abuse of discretion? Your Honor, if you read Judge Chesney's order, there's no – she doesn't say a single case for her conclusion that whether enforcement of this judgment must be left to Brazilian law. This Court's case law says U.S. law governs a U.S. judgment and can stop parties from trying to thwart it by foreign procedures. That was the key mistake I think Judge Chesney made, which was she said, well, it's up to the Brazilian courts to decide the enforceability of a U.S. judgment. It's not. A U.S. judgment and its enforceability is governed by U.S. law. Thank you. Thank you. Thank you for your arguments. The case of Triton v. DeGregorio is submitted. Thank you.
judges: Hug, Alarcon, McKeown